THE UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Miller-Holzwarth, Inc., | ) | CASE NO.:  4:09CV2282 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| L-3 Communications, Corp., et al., | ) | |
| | ) | (Resolves Docs. 7, 8) |
| | ) | |
| Defendants. | ) | |

This matter comes before the Court on two pending motions to dismiss or in the alternative stay this matter pending arbitration.  Defendant L-3 Communications, Corp. ("L-3) and Defendant NorcaTec, LLC filed their respective motions on December 18, 2009.  Plaintiff Miller-Holzwarth, Inc. ("MHI") responded in opposition to L-3's motion on January 14, 2010.  On that same, MHI admitted that NorcaTec had a valid basis for compelling arbitration.  Based upon the Court's review of the pleadings, exhibits, and applicable law, both motions are GRANTED.

**I.  Facts**

MHI manufactures periscopes for use by the United States military. As a part of its contract, MHI must ensure that the coated glass filters used in the periscopes meet published government specifications.  MHI contracts with L-3 to apply infrared blocking coating to the glass filters to meet these specifications.  In addition, MHI occasionally sells the periscopes to NorcaTec.  NorcaTec in turn sells those periscopes to General

Dynamics Land Systems ("GDLS").  GDLS then installs the periscopes on combat vehicles that are sold to the United States military.

According to MHI's complaint, a government inspection that occurred in May of 2009 raised concerns over whether the periscopes satisfied the published specifications. MHI's complaint contends that L-3 breached its contract by providing faulty filters for use in these "suspect" periscopes.  In addition, on some occasions, NorcaTec purchased the substrate, the specialized glass, used in the filter.  Accordingly, MHI also contends that NorcaTec may be at fault for the "suspect" periscopes.  As noted above, on December 18, 2009, both defendants moved to compel arbitration.  The Court now resolves their motions.

## II. Legal Standard

In reviewing the pending motion, this Court "must determine whether the dispute is arbitrable, meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement." *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 561 (6th Cir. 2008).  In the present case, MHI admits that it has a valid and binding arbitration agreement with NorcaTec. MHI further admits that the current dispute falls within the scope of that agreement.  Accordingly, the Court finds merit in NorcaTec's motion.  Additionally, MHI does not dispute that its complaint falls within the scope of arbitration clause relied upon by L-3.  MHI, however, contends that there was never an agreement between it and L-3 with respect to the arbitration provision.  As such, this Court must determine whether a valid agreement to arbitrate exists between MHI and L-3.

2

**III. Analysis**

Initially, the Court notes that L-3's standard terms and conditions include a choice of law provision.  That provision, coupled with the underlying facts of this matter, creates arguments for the application of California or Ohio law.  However, as the threshold matter before the Court is one of simple contract construction, the Court need not resolve the choice of law issue.  Regardless of the chosen state law, the Court would find that the arbitration clause was a valid and binding part of the parties' contract.

**A.  The arbitration agreement was contained in the parties' contract**

There is no dispute that MHI issued at least three purchase orders for services from L-3 that MHI claims resulted in "suspect" filters.  Moreover, the undisputed evidence demonstrates that L-3 responded to these purchase orders in the same manner on each occasion: by inserting language that required that the purchase order be subject to "EOS Terms & Conditions of Sale"[1] or by referencing a prior order that had incorporated these terms.  While MHI contends that at least two of the purchase orders were unconditionally accepted, the evidence does not support this argument.  Rather, it appears that MHI has attempted to cherry-pick language from several emails to assert that two of the purchase orders were unconditionally accepted.  The Court declines to accept this argument. Reviewing the totality of the parties' conduct and communications, it is clear that L-3 made it clear that the purchase orders were subject to its quotation, a quotation that included the arbitration provision.

---

[1] EOS is the Electro-Optical Systems Division of L-3.  That division was purchased from another entity in April of 2008.

3

L-3's standard terms and conditions included a broad arbitration provision that required resolution of "any dispute, claim or controversy" arising out of the order be arbitrated before a sole arbitrator in Los Angeles, California.  It is also undisputed that L-3's standard terms and conditions were provided to MHI and that MHI never objected to the inclusion of these terms.

MHI contends that its own standard terms and conditions require a signed acknowledgment to accept any changes offered by L-3.  MHI asserts that no signed acknowledgment exists and therefore that its own standard and conditions negate any finding that the arbitration clause was a part of the contract.  In essence, MHI argues that the parties' negotiations resulted in a battle of the forms and that this Court should not elevate one set of forms over the other.  If MHI's argument accurately reflected the parties' dealings, this argument would have appeal.  The argument, however, is not supported by the facts.

The sole evidence in support of MHI's argument consists of an affidavit of David Haubert, MHI's Chief Financial Officer.  In his affidavit, Haubert asserts as follows: "MHI's standard operating procedure is to incorporate MHI's Terms and Conditions in all purchase orders."  Haubert's affidavit does not supply any information about the particular purchase orders at issue in this litigation.  Evidence from L-3, however, indicates that MHI never supplied its terms and conditions to L-3.  For that matter, purchase order 403067 included "mhi Defense Rating Attachment 1."  That document purported to have a form attached to it that included and incorporated MHI's standard terms and conditions.  The evidence demonstrates that no document was attached.  As a result, the sole evidence before this Court indicates that MHI never took the proper steps

4

to incorporate its own terms and conditions into the parties' contract. This Court, therefore, cannot conclude that those terms and conditions were contained in the parties' contract.

Furthermore, as MHI readily performed its obligations following receipt of L-3's terms and conditions, the Court finds that MHI's conduct manifested an assent to those terms and conditions. Accordingly, the arbitration clause was a part of the parties' contract. As noted above, MHI has raised no argument that the instant dispute falls within the scope of the arbitration clause; the matter is properly subject to mandatory arbitration.

### B. The arbitration clause is not unconscionable

MHI has also raised the alternative argument that the arbitration provision is unconscionable. The Court finds no merit in this argument.

Ohio law has explained the burden of proof on MHI's claim on unconscionability as follows:

> A party seeking to invalidate an arbitration clause on grounds of unconscionability must establish that the provision is both procedurally and substantively unconscionable. Thus, a plaintiff must prove a quantum of both prongs in order to establish that a particular contract is unconscionable.
>
> Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible. This Court has held that when determining procedural unconscionability, a reviewing court must consider factors bearing directly to the relative bargaining position of the parties. Those factors include age, education, intelligence, business acumen, experience in similar transactions, whether terms were explained to the weaker party, and who drafted the contract. Substantive unconscionability encompasses those factors that concern the contract terms themselves. Contract terms are substantively unconscionable if they are unfair and commercially unreasonable.

*Bozich v. Kozusko*, 2009 WL 5150264, at *2 (Ohio Ct. App. Dec. 30, 2009) (citations, quotations, and alterations omitted).  California law has described a similar burden:

> Procedural unconscionability focuses on oppression, surprise and the manner in which the agreement was negotiated.  Substantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create overly harsh or one-sided results as to shock the conscience.  As the Supreme Court has said, the prevailing view is that both procedural and substantive unconscionability must be present before a court can refuse to enforce an arbitration provision based on unconscionability.  The court added that the absence of procedural unconscionability would as a logical conclusion mean that no matter how one-sided the contract terms, a court will not disturb the contract.  Although both substantive and procedural unconscionability are required, they need not be present in the same degree ... the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

*Young Seok Suh v. Superior Court*, 181 Cal.App. 4th 1504, 1515 (Cal. Ct. App. Feb. 18, 2010) (citations, quotations, and alterations omitted).

MHI's argument on procedural unconscionability falls well short of its burden. MHI's sole argument in this regard is that L-3's standard terms and conditions were effectively a contract of adhesion.  MHI argues that L-3 presented its terms on a "take-it-or-leave-it" basis, making them non-negotiable.  There is no evidentiary support for this position.  There is no evidence before this Court that MHI ever attempted to negotiate the terms at issue.  For that matter, there is no evidence that MHI ever took issue with any of those terms until the pending motion was filed.  As such, this Court cannot conclude that the record supports a finding that the standard terms formed a contract of adhesion.

Furthermore, MHI's assertions that L-3 had significantly more bargaining power and was a more sophisticated entity are also rejected.  The contracts at issue were executed by two sophisticated business entities.  In its complaint, MHI describes itself as

6

"a leading manufactured and produced of Army periscopes developed and constructed for use by, among others, military personnel engaged in warfare."  Doc. 1 at 2.  There is no evidence to suggest that MHI was unsophisticated or inexperienced in contractual negotiations.  The mere fact that L-3 is a larger company cannot support a finding that the parties' respective bargaining positions were so unequal that the arbitration provision must be set aside.  Accordingly, MHI has failed to demonstrate procedural unconscionability.  This Court, therefore, need not undertake a substantive unconscionability analysis.

  C. **The forum selection clause is unreasonable**

  Finally, MHI asserts that the forum selection clause within the arbitration provision should not be enforced.  This Court agrees.

  California courts have recognized that "there may be arbitration provisions which do give an advantage to one party.... In those cases,... it is not the requirement of arbitration alone which makes the provision unfair but rather the place or manner in which the arbitration is to occur."  *Bolter v. Superior Court*, 87 Cal.App. 4th 900, 908 (Cal. Ct. App. Mar. 9, 2001) (citation omitted, alterations sic).  In *Bolter,* the California court severed a provision of an arbitration clause that required arbitration in Salt Lake City, Utah.  In support, the court found that such a term was unduly oppressive.

  Unlike *Bolter*, the party opposing the forum selection clause herein is not a "Mom and Pop" franchisee, but instead is a sophisticated business entity.  However, this Court will not impose the forum-selection requirement for two reasons.  First, there is no logical connection to the state of California.  Neither MHI, nor L-3 has its principal place of business in California.  Further, no part of the underlying transactions involved the state

7

of California.  For that matter, it does not appear that MHI has any connection with California.  Second, there does not appear any requirement that MHI's arbitration with NorcaTec occur in a similarly remote location.  Rather, that provision requires arbitration in Cleveland, Ohio, a location within this District.  As a result, the Court will sever the forum selection clause from the arbitration clause upon a finding that it is unreasonable.

MHI and L-3 are ordered to confer and reach an agreement on the location of the arbitration.  In an ideal setting, NorcaTec would be included in these discussions and the parties would reach an agreement that would permit one, joint arbitration proceeding.  This Court, however, cannot compel such a proceeding.  The Court notes that MHI and L-3 should file a notice with the Court if they are unable to agree upon a proper location for the arbitration.

### IV. Conclusion

With respect to the issue of staying or dismissing the matter, the Court has reviewed the Sixth Circuit law and it is clear that the Court may choose either course of action.  *See Hensel v. Cargill, Inc.*, 198 F.3d 245 (6th Cir. 1999) (table decision); *ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091 (6th Cir. 2002).  In past cases, this Court has consistently followed one approach and will continue to do so herein.  The Court believes that its practice protects the parties' rights and promotes judicial economy.

Accordingly, MHI is compelled to arbitrate any claims in the complaint that it has against L-3 and NorcaTec.  Further proceedings in the within cause are hereby perpetually stayed and the within case is hereby CLOSED, subject to reopening upon written motion of MHI, L-3, NorcaTec, or any other proper party in interest, after the final decision of the Arbitrator.

IT IS SO ORDERED.

<u>June 2, 2010</u>  			*/s/ John R. Adams*
					JUDGE JOHN R. ADAMS
					UNITED STATES DISTRICT COURT